**RETAMCO OPERATING,
INC., Petitioner,**

v.

**REPUBLIC DRILLING COMPANY,
Respondent.**

No. 07–0599.

Supreme Court of Texas.

Argued Sept. 11, 2008.

Decided Feb. 27, 2009.

James L. Drought, Calhoun Bobbitt, Drought Drought & Bobbitt LLP, James W. Carter IV, San Antonio TX, for Petitioner.

Juan M. Castillo, Ray B. Jeffrey, Patricia F. Miller, Stumpt Craddock Massey & Farrimond, PC, Jeffrey D. Small, Law Office of Jeff Small, San Antonio, Douglas Alexander, Alexander Dubose Jones & Townsend, LLP, Austin TX, for Respondent.

Justice GREEN delivered the opinion of the Court.

In this case, we decide whether a Texas court has personal jurisdiction over an out-

of-state company accused of violating the Uniform Fraudulent Transfer Act (UFTA) by acting as the transferee of Texas oil and gas interests. We hold that, under the facts of this case, the defendant is subject to the jurisdiction of the Texas courts and, therefore, reverse the court of appeals' judgment and remand for trial.

## I

Retamco Operating, Inc. (ROI), a Texas corporation, sued Paradigm Oil, Inc. (Paradigm), another Texas corporation, in a Texas district court, over unpaid royalties related to oil and gas interests in several Texas counties. After a finding of discovery abuse, sanctions were assessed against Paradigm and the trial court entered a $16 million default judgment against Paradigm.[1] Following this interlocutory judgment, ROI amended its petition to include a claim against Republic Drilling Company

(Republic), a California corporation, for violation of the Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM.CODE § 24.001–.013. ROI claimed that during the pendency of the litigation, Paradigm assigned to Republic[2] a 72% interest in Paradigm's oil and gas wells and leases in Fayette County and a 72% interest in an option to acquire an interest in a lease in Dimmit and Webb Counties.[3] ROI alleged that these transfers were fraudulent, and that they led to Paradigm's insolvency, rendering it unable to satisfy ROI's claims.

In response to the amended petition, Republic filed a special appearance, arguing that it does not have minimum contacts with Texas, and that even if it did, ROI's cause of action did not arise from or relate to those contacts. It also argued that the trial court's assertion of jurisdiction offended traditional notions of fair play and substantial justice. Specifically,

---

1. Numerous appeals have been spawned by the *ROI v. Paradigm* litigation. First, the "death penalty" discovery sanctions against Paradigm were upheld on appeal, but the court of appeals remanded the case for a determination of unliquidated damages. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 540 (Tex.App.-San Antonio 2004, pet. denied). The trial court then found actual damages of $5.6 million, as well as, attorney's fees and exemplary damages. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 70 (Tex.App.-San Antonio 2007, pet. denied). Next, the court of appeals reversed this finding due to insufficient evidence and remanded for another hearing on unliquidated damages. *Id.* at 75. ROI also originally sued Finley Oilwell Service, but the claim was severed. The result was the same. *Finley Oilwell Service, Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 317 (Tex.App.-San Antonio 2007, pet. denied). Following a default judgment, the trial court entered actual damages of $5.6 million, along with attorney's fees and exemplary damages. *Id.* The court of appeals reversed this due to insufficient evidence. *Id.* Finally, one other case arising from this litigation involved a severed claim against the alleged alter ego of Paradigm and Finley. *See Carone v. Retamco Operating,*

*Inc.*, 138 S.W.3d 1, 15 (Tex.App.-San Antonio 2004, no pet.) (dismissing claim against alleged alter ego of companies due to lack of personal jurisdiction).

2. Paradigm and Republic are affiliated, but the record is unclear as to the extent and structure of that affiliation.

3. ROI also sued Douglas McCallum, LLC (DMLLC), a Colorado limited liability company, alleging fraudulent transfer. DMLLC was the recipient of the remaining 28% of the assignment of interests and options. DMLLC also filed a special appearance, which was granted following the court of appeals holding in this case. DMLLC's special appearance ruling was then appealed and affirmed. *Retamco Operating, Inc. v. McCallum*, 2008 WL 939196, *5 (Tex.App.-San Antonio 2008). ROI has appealed this ruling to the Court as well. These two cases pose almost identical issues, as DMLLC argues it is not subject to personal jurisdiction because the contract to assign the oil and gas interests was signed in Colorado. *See Retamco Operating, Inc. v. McCallum*, 278 S.W.3d 778 (Tex.2009) (per curiam).

Republic argued that because the allegedly fraudulent assignment of the Texas leases occurred entirely outside of Texas—in California—the Texas court did not have personal jurisdiction over Republic. Following a hearing, the trial court denied Republic's special appearance, making no findings of fact or conclusions of law. Republic then filed an interlocutory appeal with the court of appeals. The court of appeals reversed, holding that Republic is not subject to personal jurisdiction in Texas. 2007 WL 913206, *6–7. Because we conclude that by its actions Republic subjected itself to the jurisdiction of Texas courts, we reverse the court of appeals' judgment.

## II

■ Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002). The defendant seeking to avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pled by the plaintiff. *Id.* When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002) (citations omitted). Here, ROI has pled that Republic is subject to personal jurisdiction because it is the fraudulent transferee of Texas real property—oil and gas interests.

Republic does not dispute that the property at issue is located in Texas or that it was transferred from Paradigm to Republic. However, Republic argues that because the transaction causing the transfer occurred in California, jurisdiction is negated. For the reasons discussed below, we disagree.

■ Personal jurisdiction is a question of law which we review *de novo*. *Id.* at 794. "Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007).

### (1) The Long Arm Statute

■ As an initial matter, Republic argues that ROI "never fulfilled its initial pleading burden to bring Republic within the reach of the long-arm statute," because ROI alleged no acts that constitute "doing business" under the long-arm statute. But the Texas long-arm statute's broad doing-business language "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Id.* at 575 (citations omitted); *accord Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex.2005).[1] Therefore, we only analyze whether Republic's acts would bring Republic within Texas' jurisdiction consistent with constitutional due process requirements. *See Moki Mac,*

4. The Texas long-arm statute provides:
"In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or
(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state."
TEX. CIV. PRAC. & REM.CODE § 17.042.

221 S.W.3d at 575 (citations omitted); *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).[5]

### (2) Due Process Constraints

 Under constitutional due-process analysis, personal jurisdiction is achieved when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). We focus on the defendant's activities and expectations when deciding whether it is proper to call the defendant before a Texas court. *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154.

### (A) Minimum Contacts

 A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection*, 83 S.W.3d at 806 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A nonresident's contacts can give rise to either specific or general jurisdiction. *Am. Type Culture Collection*, 83 S.W.3d at 806. General jurisdiction arises when the defendant's contacts with the forum are continuous and systematic. *Id.* at 807. Specific jurisdiction, which is alleged here, arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex.1995). In a specific jurisdiction analysis, "we focus ... on the 'relationship among the defendant, the forum [,] and the litigation.'" *Moki Mac*, 221 S.W.3d at 575–76 (citing *Guardian Royal*, 815 S.W.2d at 228).

### 1. Purposeful Availment

 We consider three issues in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

**5.** Republic also argues that the business certification waiver provision of section 8.01B(13) of the Texas Business Corporation Act limits jurisdiction. TEX. BUS. CORP. ACT § 8.01B(13) ("a foreign corporation shall not be considered to be transacting business in this state ... by reason of ... acquiring, in transactions outside of Texas, royalties and other non-operating mineral interests"). The certification provisions of the Business Corporation Act do not limit the scope of the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 575 ("the long-arm statute's broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow' "). Thus, the Act has no bearing on constitutional due-process analysis. *See Amer. Type Culture Collection*, 83 S.W.3d at 806 ("We rely on precedent from the United States Supreme Court as well as our own state's decisions in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction.") Further, the business certification requirements do not act as a definitive list of those out-of-state defendants that would or would not have a reasonable expectation of being called into a Texas courtroom.

First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Moki Mac*, 221 S.W.3d at 575 (internal citations and quotations omitted). Additionally, the minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number. *Am. Type Culture Collection*, 83 S.W.3d at 806. Here, these considerations lead us to conclude that Republic purposefully availed itself of the privilege of conducting activities in Texas.

■■■ Republic's contacts with Texas were purposeful, not random, fortuitous, or attenuated. Oil and gas interests are real property interests. *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 776 (1955); *State v. Quintana Petroleum Co.*, 134 Tex. 179, 133 S.W.2d 112, 115 (1939) (citing *Sheffield v. Hogg*, 124 Tex. 290, 77 S.W.2d 1021, 1030 (1934)). Republic was aware that the oil and gas interests it received were located in Fayette, Dimmit, and Webb Counties, Texas. Thus, Republic purposefully took assignment of Texas real property. And while Republic may not have actually entered the state to purchase this real property, "[j]urisdiction ... may not be avoided merely because the defendant did not physically enter the forum state." *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."). Republic, by taking assignment of Texas real property, reached out and created a continuing relationship in Texas. Under the assignment, it is liable for obligations and expenses related to the interests. This ownership also allows Republic to "enjoy ... the benefits and protection of [Texas laws.]" *Michiana*, 168 S.W.3d at 787 (citing *Int'l Shoe*, 326 U.S. at 319, 66 S.Ct. 154). Unlike personal property, Republic's real property will always be in Texas, which leaves no doubt of the continuing relationship that this ownership creates.

■■■ We noted in *Michiana* that "in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state." *Id.* at 787. (emphasis in original) (holding that an Indiana RV dealer did not have minimum contacts with Texas where the dealer's only contact with Texas was the Texas resident's decision to place an order from Texas). But the purchase of real property in Texas does not establish a single contact like that of the sale of the recreational vehicle in *Michiana*. *See id.* Rather, the purchase and ownership of real property could "involve[ ] many contacts over a long period of time," which would carry with it certain continuing obligations; *e.g.*, valuation and tax issues, and potential expenses of maintaining the interest. *See id.* In *Michiana*, we found it "hard to imagine what possible benefits and protection Michiana enjoyed from Texas law." *Id.* at 787, 794. To the RV dealer, the destination of the RV was fortuitous. Here, the location of the transferred asset is not fortuitous; the property's location is fixed in this state. This case, then, is different from *Michiana*, and we have no difficulty imagining just how Republic would benefit

from the processes and protections of Texas law. Should Republic ever wish to enforce rights under its interest in Texas oil and gas leases and wells, it is this state where those rights can be enforced, not California.

Republic's contacts with Texas were also not the result of the unilateral actions of a third party. Republic was a willing participant in a transaction with an affiliated Texas company to purchase Texas real property. Unlike in *Michiana*, where the contacts with Texas and the sale at issue was "initiated entirely by [the plaintiff]," 168 S.W.3d at 784, Republic here went well beyond answering a phone call from a Texas resident or shipping goods to Texas. Where a phone call originates or where a shipment ends up may be random or fortuitous, but when purchasing real property, the location matters.

Lastly, Republic has sought a "benefit, advantage or profit" in Texas. *Id.* at 785. The assignment gave Republic valuable assets in Texas, including the right to enforce warranties and covenants related to the real property. Republic's additional conduct since the transfer also indicates that Republic sought a benefit from the transaction. *See Moki Mac,* 221 S.W.3d at 577 ("In determining whether the defendant purposefully directed action towards Texas, we may look to conduct beyond a particular business transaction at issue...."). Republic has reaped benefits from the property in the amount of approximately $1.2 million in revenues, and has sold some of the property.

We have said that "a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as to neither profit from the forum's laws nor be subject to its jurisdiction." *Michiana,* 168 S.W.3d at 785. Certainly this is true in some transactions, such as the purchase of personal property or out-of-state services.

*See, e.g., BMC Software Belgium,* 83 S.W.3d at 793 (finding no personal jurisdiction where details of a personal services contract were discussed in Texas); *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex.1977) (finding no personal jurisdiction over Oklahoma defendant where the contract for installation of highway advertisement signs by Texas company was signed and performed in Oklahoma). But we have found that, even in instances where a contract was signed in another state, an out-of-state company with no physical ties to Texas still has minimum contacts with Texas when it is clear the company purposefully directed its activities towards Texas. *See, e.g., Zac Smith & Co., Inc. v. Otis Elevator Co.,* 734 S.W.2d 662, 665–66 (Tex.1987) (finding personal jurisdiction where out-of-state contract was formed "for the sole purpose of building a hotel in Texas"); *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 437 (Tex.1982) (finding personal jurisdiction where enrollment for out-of-state school was "actively and successfully solicited" in Texas even though the defendant signed the contract in Arizona). Here, we find the same. Republic, by purchasing Texas real property, has purposefully availed itself of the privilege of conducting activities in Texas. *See Michiana,* 168 S.W.3d at 784–85.

### 2. Arise From or Related to

 "[P]urposeful availment alone will not support an exercise of specific jurisdiction ... unless the defendant's liability arises from or relates to the forum contacts." *Moki Mac,* 221 S.W.3d at 579. We look for a "substantial connection between [the defendant's forum] contacts and the operative facts of the litigation." *Id.* at 585. Thus, we must consider the claims involved in the litigation to determine the operative facts. ROI alleges that Republic is the transferee of a fraudulent transfer in

violation of the UFTA. The UFTA provides, in part, that "[a] transfer ... is fraudulent ... if the debtor made the transfer ... with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation." TEX. BUS. & COM.CODE § 24.005(a)(1), (2); *Trigeant Holdings, Ltd. v. Jones,* 183 S.W.3d 717, 726 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (noting that "the UFTA not only creates liability against 'the person for whose benefit the transfer was made,' such as the debtor, but also against 'the first transferee of the asset,' or any 'subsequent transferee' ").

Republic argues that the focus of the litigation will be on the assignment that took place in California because the operative facts involved will be whether reasonably equivalent value was given for the property and whether the leases were taken in good faith. *See* TEX. BUS. & COM.CODE §§ 24.005(a)(2), .006, .009. We agree that the assignment will be an operative fact, but the real property itself will also be an operative fact, or at the very least, will have a substantial connection to the operative facts. Without an asset, no fraudulent transfer can occur under the UFTA. *See id.* § 24.002(12) (" 'Transfer' means ... disposing of or parting *with an asset or an interest in an asset* ....") (emphasis added). Here, the Texas oil and gas interests are the assets. Proof that these assets were transferred and an assessment of their value will be essential to the UFTA analysis; without that proof, the UFTA claim fails.

■■■■ Republic is alleged to have received transfer of Texas real property from a Texas resident, during the pendency of a Texas suit, for the purpose of defrauding a Texas resident. As a result of this transaction, assets ROI may have

recovered from Paradigm are now in the possession of Republic. These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas. *See* TEX. CIV. PRAC. & REM.CODE § 17.042 ("a nonresident does business in this state if the nonresident ... commits a tort in whole or in part in this state"); *see also In re Tex. Am. Express, Inc.,* 190 S.W.3d 720, 725 (Tex.App.-Dallas, no pet.) (noting that a fraudulent transfer under the UFTA is a tort).

**(B) Traditional Notions of Fair Play and Substantial Justice**

■■■■ Having determined that Republic has minimum contacts with Texas sufficient to support specific jurisdiction, we must determine whether an assertion of jurisdiction over Republic comports with "traditional notions of fair play and substantial justice." *Guardian Royal,* 815 S.W.2d at 228. "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* at 231 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). Nonetheless, we still consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Guardian Royal,* 815 S.W.2d at 228, 231 (citing *Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174). These factors weigh heavily in ROI's favor. ROI has an interest in resolving this controversy in Texas because that is where the litigation began. Texas has an interest in resolving controversies involving real property within its borders

and, given that the prior litigation deals with this property, it is most efficient to continue to use Texas as the forum to resolve the dispute. Moreover, California has much less of an interest in resolving Texas real property disputes than does Texas. Republic may be burdened by litigating outside its home state, but these other factors weigh heavily against this burden.

### III

Republic has established minimum contacts with Texas, and the trial court's assertion of jurisdiction over Republic does not offend traditional notions of fair play and substantial justice. *See Guardian Royal*, 815 S.W.2d at 228. Therefore, we reverse the court of appeals' judgment and remand to the trial court for further proceeding consistent with this opinion.