COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

 


 
 
  
 CASAS GRANDES CONFECTIONS, LLC,
  
                             Appellant,
  
 v.
  
 DULCES ARBOR, S. DE R.L. DE
 C.V. AND BLUEBERRY SALES, LLP,  
  
                             Appellees. 
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 §
 
  
 
 
  
 No.
 08-10-00238-CV
  
 Appeal
 from the
  
 County
 Court at Law No. 7
  
 of
 El Paso County, Texas 
                                     
 (TC#
 2009-765) 
 
 


 

O P I N I O N

            Casas Grandes Confections, LLC
appeals from the denial of its special appearance.  We affirm.

Factual and Procedural Background

            Dulces Arbor, a Mexican company, and
Blueberry Sales, an American company, sued Casas Grandes and several other
entities and individuals in El Paso, Texas. 
According to their third amended petition,[1]  Dulces Arbor owns a candy manufacturing plant (“the
Property”) in Ciudad Juarez, Mexico.  Blueberry
Sales, which is Dulces Arbor’s American counterpart, used the plant to make
candy with equipment that it leased from C Leasing Company.

In 2007, Blueberry Sales and Dulces Blueberry, a Mexican company,
combined certain assets with another company to create Simply Goodies.  Bridge Healthcare Finance, LLC, and Bridge
Opportunity Finance, LLC (collectively “Bridge”) provided the lending for this
transaction.  The petition states,
“Pursuant to the creation of Simply Goodies, DULCES ARBOR leased the Property
to Dulces Blueberry.”

            In 2008, Robert Whetten, as agent of
“the Elamex Entities,” offered to purchase the Property.  The Elamex Entities include Elamex, S.A. de
C.V. (“Elamex Mexico”), Elamex USA Corp. (“Elamex USA”), and Mount Franklin
Foods (“MFF”).  Elamex Mexico is a
Mexican corporation, which owns Elamex USA, an American corporation, which in
turn owns MFF, a Texas limited liability company.  Whetten is a board member of Elamex Mexico
and MFF and is the sole director of Elamex USA. 
He is a former manager of Casas Grandes and a partner in Sunrise General
Partnership, the United Kingdom partnership that owns Casas Grandes.  Sunrise General Partnership also owns Sunrise
Candy, LLC, a Nevada company that does business in Texas.  Another related company is Manufacturas de
Tamaulipas, S.A. de C.V.

The terms of the proposed sale of the Property are complicated.  The petition states:  “The transaction evolved to one in which,
among other things, Manufacturas would purchase the Property from DULCES ARBOR
pursuant to the terms of a Buy/Sell Agreement, CASAS GRANDES CONFECTIONS would
enter into an Asset Purchase and Non-Competition Agreement and Consulting
Agreement with Casa Brokers, LLC, and Silver Eagle Oil, Inc. would enter into a
Guaranty of Payment to induce BLUEBERRY SALES to enter into the Asset Purchase
and Non-Competition Agreement with CASAS GRANDES CONFECTIONS.”

In November 2008, as negotiations for the purchase of the Property
seemed to be nearing completion, Bridge contacted Dulces Arbor to ask what
Dulces Arbor would take in exchange for dismissing certain Mexican lawsuits
which had been filed to collect past-due rent from Dulces Blueberry.  Dulces Arbor offered to dismiss the suits in
exchange for a $2 million standby letter of credit.  After initially agreeing to this arrangement,
Bridge suddenly “went silent.”  Shortly
thereafter, the Elamex Entities advised Plaintiffs “that the purchase of the
Property was permanently off unless certain new conditions were met.”

In December 2008, MFF and Sunrise Candy assumed control of Simply
Goodies’ El Paso warehouse, located at 1240 Don Haskins.  On December 8, Casas Grandes and Sunrise
Candy bought Simply Goodies’ assets located in Mexico and in Texas through a
non-judicial UCC foreclosure sale in El Paso. 
The petition alleges that the defendants “schemed such that DULCES
ARBOR, although required to be notified about the foreclosure sale according to
the UCC, were [sic] intentionally never notified of the sale intentionally
depriving DULCES ARBOR of its legal rights.”

Simultaneous with the foreclosure on Simply Goodies’ assets, “one or
more of the Defendants” took control of the Property and began using it and the
C Leasing equipment to make candy for MFF. 
Plaintiffs claim that the Defendants’ goal all along was to take over the
Property without buying it or paying to use it. 
They allege that Defendants “masterminded a scheme to acquire the assets
of Simply Goodies from Bridge and thereafter commenced manufacturing candy in
the Property for [MFF], all the while causing no rent to be paid . . . .”  The petition asserts several causes of
action.  Most importantly for purposes of
this appeal, the petition alleges that the Defendants committed fraud by
inducing Plaintiffs to undertake negotiations to sell the Property and “causing
them to forebear from taking additional actions to protect their interests in
the Property, when, in fact, they had . . . no intention of performing the
agreements and were, instead, intending to acquire the Simply Goodies assets,
operate out of the Property for no consideration and deprive Plaintiffs from
receiving valuable and appropriate consideration for the use of its [sic]
Property and leased equipment.”

Casas Grandes filed a sworn special appearance, stating:  It is a Nevada limited liability company; its
“registered office” is in Nevada; it does not conduct business in Texas; it
does not maintain a place of business in Texas; it has no agent for service of
process in Texas; its sole member is a United Kingdom partnership; it has never
entered into any contract with a Texas resident to be performed in Texas; it
has never recruited a Texas resident for employment, it does not own or lease
any property in Texas; and it has only two managers, one of whom is a resident
of Utah and the other a resident of Chihuahua, Mexico.

Personal Jurisdiction

            Although the plaintiff bears
the initial burden of pleading allegations sufficient to establish personal
jurisdiction, a defendant who files a special appearance assumes the burden to
negate all grounds for personal jurisdiction alleged by the plaintiff.  Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex.
2002).  Whether a court has personal
jurisdiction over a defendant is a question of law,
but it often requires the resolution of underlying factual issues.  Id.
at 805-06.  In this case, Casas Grandes
did not request findings of fact. 
Therefore, we review the denial of the special appearance de novo, but we presume that the trial court
resolved all factual disputes in favor of its decision.  See Coleman,
83 S.W.3d at 806.

            The Texas
long-arm statute reaches as far as the United States Constitution will
allow.  Retamco Operating, Inc. v. Republic Drilling Co., 278 S.W.3d 333, 337
(Tex. 2009).  Federal due process is
satisfied if two requirements are met. 
First, the defendant must have minimum contacts with the state.  Id.
at 338.  Second, the exercise of
jurisdiction must comport with traditional notions of fair play and substantial
justice.  Id.  Casas Grandes makes no
argument regarding the second requirement in its brief.  We therefore focus only on whether it
established minimum contacts with Texas. 
For specific jurisdiction, the minimum contacts analysis requires that
the defendant purposefully availed itself of conducting activities in the forum
state, and that the cause of action arises from or is related to those
activities.  Id.[2]

Casas Grandes Purposefully
Availed Itself of Conducting Activities in Texas

We must consider three issues in determining whether Casas
Grandes purposefully availed itself of the privilege of conducting activities
in Texas.  See id.  First, only Casas Grandes’ contacts are relevant, not the unilateral
activity of another party or a third person. 
See id. at 339.  Second, the contacts must have been
purposeful rather than random, fortuitous, or attenuated.  See id.  Third, Casas Grandes must have sought some
benefit, advantage, or profit by availing itself of Texas.  See id.  We focus on the quality and nature
of the contacts, rather than their number. 
Id.

Plaintiffs’ petition cites several contacts that Casas Grandes had with
Texas.  First, Whetten lived in El Paso
while negotiating the purchase of the Property. 
In his deposition, he admitted that he lived in El Paso from 2006 to
2009, but he had a home in Mexico at the same time.  Although Whetten is a partner in the
partnership that owns Casas Grandes and was a manager of Casas Grandes at one
time, he resigned as manager before Casas Grandes’ acquisition of Simply
Goodies’ assets.  Because only the Defendant’s contacts
are relevant, rather than the unilateral activity of another party, we agree with Casas Grandes that
Whetten’s mere residence in El Paso is insufficient to establish that Casas
Grandes purposefully availed itself of Texas.

Plaintiffs’ petition also alleges that Simply Goodies had a warehouse in
El Paso at 1240 Don Haskins.  The
petition further alleges that, on December 8, 2008, Casas Grandes and Sunrise
Candy bought Simply Goodies’ assets from Bridge in a non-judicial UCC
foreclosure sale.  At the special
appearance hearing, Plaintiffs submitted a copy of an asset purchase agreement
between Bridge and Casas Grandes.  For
each party, the agreement provides addresses where any notices or other
communications required or permitted under the agreement must be made.  Regarding Casas Grandes, the notice provision
states:

If to Buyer, to it at:

 

Casa Grandes [sic] Confections, LLC

1800 Northwestern Drive

El Paso, Texas 79912 

 

In
addition, a copy of any notice or communication to Casas Grandes was to be sent
to a law firm located in El Paso.  The assets
were sold “AS-IS, WHERE-IS.”  Payment was
to be made by wire transfer to a bank in Chicago, Illinois.  The agreement includes an Illinois
forum-selection clause and choice-of-law clause.

            Plaintiffs additionally submitted a
copy of a bill of sale, executed on December 8, 2008, wherein Casas Grandes
sold all of its rights to the assets located at 1240 Don Haskins to Sunrise
Candy.  The bill of sale states that the
assets were sold “AS-IS” and “WHERE-IS.” 
Unlike the asset purchase agreement, the bill of sale is governed by
Texas law.

            Next, Plaintiffs submitted a copy of
a loan agreement, also dated December 8, 2008. 
The first page of this document begins as follows:

LOAN AGREEMENT

Between

CASAS
GRANDES CONFECTIONS, LLC                                   ELAMEX,
S.A. de C.V.

1800
Northwestern Dr.                                   and                  Ave. Ishikawa #9040

El Paso,
Texas 79912                                                              Cd.
Ju<rez, Chih. Mex CP 32525

 

The loan
agreement requires that notices be sent to the addresses provided on the first
page.  The agreement states that it was
“executed and delivered in the State of Texas, shall be governed by and
construed in accordance with the laws of the State of Texas, and shall be
performable by the parties hereto in the county in Texas where the Lender’s address
set forth on the first page hereof is located.”[3]  The purpose of the loan evidenced by this
agreement was to finance Casas Grandes’ purchase of Simply Goodies’ assets.

            Finally, Plaintiffs submitted an
option contract, dated December 31, 2008, between Casas Grandes and MFF.  This contract gives MFF the option to
purchase some of the Simply Goodies assets that Casas Grandes obtained from
Bridge (presumably, the Mexican assets). 
The contract requires that notices to Casas Grandes be sent to its
address in Woods Cross, Utah.  The
choice-of-law clause provides that Texas law controls.

            Based on the addresses provided in
the asset purchase agreement and the loan agreement, Plaintiffs contend that
Casas Grandes maintains an office in El Paso. 
Casas Grandes argues that there is no evidence that it actually
conducted business at the address listed in these documents.  Casas Grandes also relies on its sworn
special appearance, which states that it does not maintain a place of business
in Texas.

We conclude that the trial court could have inferred from the asset
purchase agreement and the loan agreement that Casas Grandes has some sort of office
in El Paso.  In the asset purchase
agreement, the El Paso address appears as the address of Casas Grandes itself,
not the address of an agent.  The
agreement states that notice must be sent to Casas Grandes “to it at” the El Paso address.  [Emphasis added.]  A copy was to be sent to its El Paso
attorneys.  Similarly, the loan agreement
states that it is between Elamex Mexico and Casas Grandes Confections, LLC,
followed by an El Paso address.  This too
appears as the address of Casas Grandes rather than an agent.  The option contract gives a non-Texas address
for Casas Grandes, and the sworn special appearance states that Casas Grandes
does not have a place of business in Texas. 
Thus, the trial court was presented with a factual dispute as to whether
Casas Grandes has an office in Texas.  Given
its denial of the special appearance, we presume the court resolved this
dispute in favor of an implied finding that Casas Grandes does maintain an
office here.[4]

In addition to indicating that Casas Grandes has an office here, the
contracts discussed above demonstrate that Casas Grandes purposefully availed
itself of conducting activities in Texas in other ways.  The loan
agreement recites that it was executed and delivered in Texas and was performable in Texas.  At least three of
the contracts relate to the buying and selling of assets located in this
state.  The assets were bought and sold “where
is.”  Moreover, three of the contracts contain Texas
choice-of-law clauses.  See Internet Advertising Group, Inc. v.
Accudata, Inc., 301 S.W.3d 383, 390 (Tex.App.--Dallas 2009, no pet.)(“A
choice of law provision warrants some weight in considering whether a defendant
has purposefully invoked the benefits and protection of a state’s law for
jurisdictional purposes; however, such a provision standing alone is not
sufficient to confer jurisdiction.”).

            In summary, the evidence shows that
Casas Grandes has an office in this state, that it bought and sold personal
property located in this state, that it entered into contracts concerning that property,
and that it chose this state’s laws to govern some of the contracts.  These are the contacts of Casas Grandes
itself, not a third party.  They were
purposeful rather than random, fortuitous, or attenuated.  And Casas Grandes obviously expected some benefit, advantage, or
profit from buying and selling the assets. 
We therefore conclude that Casas Grandes purposefully availed itself of
conducting activity in Texas.  See Trigeant Holdings, Ltd. v. Jones, 183 S.W.3d 717, 728 (Tex.App.--Houston
[1st Dist.] 2005, pet. denied)(“By participating in a Texas transaction
involving the transfer of Texas-based assets to allegedly defraud a Texas
resident, the Trigeant Holdings entities purposefully availed themselves of the
benefits and privileges of conducting business in Texas.”).

This Suit Arises From, Or Is Related To, Casas
Grandes’ Texas Activities

Purposeful availment will not
support an exercise of specific jurisdiction unless the defendant’s liability
arises from or relates to its contacts with the forum.  Retamco,
278 S.W.3d at 340.  There must be a
substantial connection between the forum contacts and the operative facts of
the litigation.  Id.  We consider the claims
involved in the litigation to determine the operative facts.  Id.

Casas Grandes asserts that the
operative facts that will be the focus of the trial are those surrounding
Defendants’ alleged interference with Dulces Blueberry’s payment of rent to
Dulces Arbor and Defendants’ use of the C Leasing equipment.  Casas Grandes contends that there is no
connection between these facts and Casas Grandes’ contracts regarding the purchase
and sale of Simply Goodies’ assets. 
According to Casas Grandes, Plaintiffs do not seek damages from Casas
Grandes for depriving them of whatever interest they may have had in Simply
Goodies’ assets.  Instead, they only seek
rent for use of the Property and the C Leasing equipment.

Casas Grandes’ reading of the
petition is overly restrictive.  In their
fraud claim, Plaintiffs allege that Defendants induced them to undertake
negotiations for sale of the Property, “when, in fact, they had . . . no
intention of performing the agreements and were, instead, intending to acquire
the Simply Goodies assets, operate out of the Property for no consideration and
deprive Plaintiffs from receiving valuable and appropriate consideration for
the use of its [sic] Property and leased equipment.”  The petition also states that Defendants
“schemed such that DULCES ARBOR, although required to be notified about the
foreclosure sale according to the UCC, were [sic] intentionally never notified
of the sale intentionally depriving DULCES ARBOR of its legal rights.”  The paragraph labeled “Damages,” states,
“Defendants are liable for the damages caused by their conduct and actions
described above in a sum exceeding $2,000,000, plus pre- and post-Judgment
interest.”  Thus, Plaintiffs allege that
one of the objects of the fraud perpetrated against them was for Defendants to
obtain Simply Goodies’ assets.  One of
the ways in which this object was accomplished was by depriving Plaintiffs of
notice of the foreclosure sale.  Although
part of the trial will focus on the events that occurred at the Property in
Mexico, the part of the trial that concerns Casas Grandes will focus on its purchase
of Simply Goodies’ assets.  Because Casas
Grandes’ contacts with Texas relate to these assets, there is a substantial
connection between the forum contacts and the operative facts of Plaintiffs’
claims.  See Retamco, 278 S.W.3d at 340-41 (holding that suit arose from
alleged fraudulent transfer of real property located in Texas even though the
allegedly fraudulent assignment occurred in California).  Furthermore, the generic damages paragraph,
quoted in full above, does not limit damages to lost rent, but reasonably
encompasses damages for all of the allegedly tortious conduct of Defendants.  We therefore conclude that this suit arises
from or relates to Casas Grandes’ contacts with Texas.

Conclusion

            We overrule
Casas Grandes’ appellate issues and affirm the order denying the special
appearance.

 

 

 

May 2, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)

Chew, C.J. (Senior)(Sitting by Assignment)











[1]
This is the live pleading for purposes of this appeal.  At the hearing on the special appearance, the
trial court granted Plaintiffs leave to file the third amended petition, and
both sides cite to this petition in their briefs.





[2]
There are two types of personal jurisdiction--specific and general.  Retamco,
278 S.W.3d at 338.  Although Plaintiffs
here assert both types, we need not address general jurisdiction because we
conclude that specific jurisdiction exists.





[3]
The last part of this sentence does not make sense because the lender’s address
on the first page is the Mexican address of Elamex Mexico.





[4]
It has been noted that a company subjects itself to general jurisdiction by
maintaining an office in the forum state. 
See PHC-Minden, L.P. v.
Kimberly-Clark Corp., 235 S.W.3d 163, 168 (Tex. 2007).  That is certainly true when the defendant
uses the office extensively for company business.  See id.
at 167-68 (discussing Perkins v.
Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485
(1952)).  In this case, there is no
evidence regarding how Casas Grandes used its El Paso office.  Therefore, we do not believe the office
conclusively establishes general jurisdiction. 
We consider it only as one of several factors establishing specific
jurisdiction.