

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00379-CV

SREEDHARAN PILLAI AND ANITHA PILLAI, APPELLANTS

V.

NARAYANA G. PILLAI AND PRIYA PILLAI, APPELLEES

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 66,872-B, Honorable John B. Board, Presiding

March 16, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK, J.J. and BOYD, S.J.[1]

This is an interlocutory appeal from an order denying a special appearance by Sreedharan and Anitha Pillai (husband and wife) in a lawsuit filed to collect on a loan made to them by Narayana G. and Priya Pillai (husband and wife). Appellants allege that 1) they did not have sufficient contacts with the State of Texas for general jurisdiction to be exercised, 2) they did not have sufficient contacts with the State of

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Texas for specific jurisdiction to be exercised, and 3) there were no meaningful allegations made against Priya. We reverse the order.

Sreedharan and Narayana are brothers. The latter extended to the former (and his wife) a $200,000 loan, which loan was memorialized in a promissory note dated August 4, 2001. Narayana lived in Amarillo at the time, while Sreedharan and his wife lived in Toronto, Canada. And, the loan proceeds were used by Sreedharan and Anitha to buy a home in Canada. According to the record, Narayana travelled to Canada to see the prospective home before releasing the funds. While one may speculate that Sreedharan solicited the transaction, the belief would be just that . . . speculation. The record fails to disclose who first broached the subject or the location of the parties when the subject was broached.

Nevertheless, a promissory note was executed. Its terms required repayment in monthly installments of $2,220.41 payable in Amarillo, and interest was to accrue at 6%. The first installment was due February 1, 2002, while the last was due on January 1, 2012. Included in the writing was a provision stating that the note "shall be construed in accordance with the laws of the State of Texas." No payments were made, and Narayana ultimately sued his brother and sister-in-law in February of 2014.

The record further discloses that Sreedharan travelled from Canada to Amarillo three times to visit his brother. While there, he repaired Narayana's computer and received payment for same. Nothing of record indicates that the computer repairs were in anyway related to or arising from the loan. Other evidence indicates that Sreedharan and his brother met in California for some reason before suit was filed. During that time, they discussed repayment of the obligation. That led to Sreedharan writing a letter to

Narayana wherein he proposed to repay only $200,000 and no interest. Where Sreedharan was when he wrote the letter is not disclosed in the record. Nor does the record indicate whether the letter was sent to Narayana in Amarillo or elsewhere. And, though other written communications appear of record between the two, all but one have the same defect; that is, they do not indicate where the parties were when the missives were sent or received.

Upon being sued, Sreedharan and his wife filed a special appearance and contended that the trial court lacked personal jurisdiction over them. Via that dilatory plea, each endeavored to show the absence of both general and specific jurisdiction. The trial court denied the motion, which decision resulted in this interlocutory appeal.[2]

The standard of review is *de novo. Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Furthermore, personal jurisdiction over a defendant may be established in two ways. One involves the concept of specific jurisdiction, and the other pertains to general jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

We address the matter of specific jurisdiction first. It concerns the relationship between the defendant, his contacts with the forum, and the relationship between those contacts and the cause of action. *Retamco Operating, Inc. v. Republic Drilling, Inc.*, 278 S.W.3d 333, 339-41 (Tex. 2009). Furthermore, such jurisdiction may arise from the execution of one contract, *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777,

---

[2] Though there may be question about the validity of the note, we do not address that as part of this interlocutory proceeding about the existence of personal jurisdiction over the defendants. *See Wattles v. Minerva Partners, Ltd.*, No. 07-12-0096-CV, 2012 Tex. App. LEXIS 7944, at *5-6 (Tex. App.—Amarillo September 19, 2012, no pet.) (mem. op.) (when the appellant argued that his guaranty was void as a basis to defeat personal jurisdiction, it was noted that the issue was whether the trial court could exercise personal jurisdiction over him, not whether there was a viable cause of action).

787 (Tex. 2005), and it is not necessary for the non-resident to appear on Texas soil for the one contract to suffice. *Retamco Operating, Inc. v. Republic Drilling, Inc.*, 278 S.W.3d at 339. Nevertheless, the touchstone is purposeful availment. That is, a defendant submits himself to the jurisdiction of a state when he "'purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013), *quoting Retamco Operating, Inc. v. Republic Drilling, Inc., supra*. In deciding whether that touchstone has been met when the cause of action is contractual in nature, the answer does not turn on the application of mechanical tests or conceptualistic theories relating to the place of contracting or of performance. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Rather, the approach must be "'highly realistic,'" and, under it, the contract's creation is normally an intermediate step serving to tie prior business negotiations with future consequences which themselves are the real object of the business transaction. *Id.* at 478-79. So, it is the indicia of prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing that are evaluated when assessing if the defendant purposefully established minimum contacts within the forum. *Id.* at 479. Recognizing this, we turn to the case before us.

Again, the record fails to show that any of the negotiations resulting in the loan occurred in Texas. Nor does it show that the initial request for the $200,000 occurred in Texas or was directed to Narayana while he was in Texas, or was even made by Sreedharan or his wife. Nor does it indicate the geographic location of the bank or bank

4

account from which the funds were sent once Narayana traveled with the promissory note to Canada to approve of the home. And, while it appears that Sreedharan travelled to Amarillo on several occasions, we lack evidence from which one could reasonably infer that the visits were in some way related to the loan. This is of consequence because under the theory of specific jurisdiction, the cause of action (*i.e.,* breached contract) must arise from or relate to the contacts. *Retamco Operating, Inc. v. Republic Drilling, Inc.*, 278 S.W.3d at 339-41. And, to the extent one considers the purported settlement negotiations, portions of same occurred in California while nothing of record indicates that any happened in Texas.

In effect, the sum total of the links between Sreedharan, Anitha, the transaction, and Texas (at least on the record before us) consist of Narayana living in Texas, an agreement to send payments to an address in Texas, and a commitment that the note be "construed," not enforced, in accordance with Texas law. Of course, Narayana's residence in Texas is of no import since jurisdiction depends upon the defendant's contacts with the forum, not the plaintiff's. *J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 603 (Tex. App.—Houston [1st Dist.] 2000, no pet). And what remains of record is not the stuff of purposeful availment. As noted in the authority cited by Nayarana, "contracting with a Texas company and requiring payment in Texas do not alone necessarily establish sufficient minimum contacts to establish specific jurisdiction . . . [n]or does a choice of law provision alone establish jurisdiction." *North Coast Commer. Roofing Sys. v. RMAX, Inc.*, 130 S.W.3d 491, 495 (Tex. App.—Dallas 2004, no pet.).[3]

---

[3] While the court in *RMAX* ultimately concluded that personal jurisdiction over the defendant existed, the record there contained evidence of greater links between the defendant and Texas than the

5

Given the need to apply the "highly realistic" approach mandated by *Burger King* which focuses not only on prior negotiations and contemplated future consequences, but also the terms of the contract and the parties' actual course of dealing, the record before us falls short of revealing that Sreedharan and Anitha purposefully availed themselves of the privilege of conducting activities within the forum state. So, we cannot say that specific jurisdiction existed over either, and the trial court erred in holding otherwise.

As for general jurisdiction, the focus does not lay upon the quality of the defendants' contacts with Texas and whether the cause of action arose from or related to those contacts. Rather the analysis is more demanding with a substantially higher threshold. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). Satisfying that higher threshold normally requires proof that "'the defendant . . . engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; [and] activities that are less extensive than that will not qualify for general in personam jurisdiction.'" *Id., quoting* 4 WRIGHT AND MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5. In other words, the record must show that the non-resident defendant engaged in continuous and systematic contacts with the forum state for there to be general jurisdiction over him. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d

_____

record does here. At the very least, the record in *RMAX* illustrated that the defendant solicited and obtained credit from the plaintiff's Texas office. Furthermore, the credit relationship contemplated a continuing relationship involving multiple purchases from the Texas company. At bar, we have no evidence of a relationship involving multiple extensions of credit from a Texas entity or individual. Nor does the record even tell us if any of the negotiations or solicitations resulting in the contract occurred in Texas. Like dissimilarities exist in the other authority cited by Narayana; for instance, the record in *Ark of Safety Christian Church, Inc. v. Church Loans & Invs. Trust*, No. 07-07-0040-CV, 2006 Tex. App. LEXIS 1201 (Tex. App.—Amarillo February 14, 2006) (mem. op.), *appeal dism'd,* 279 S.W.3d 775 (Tex. App.—Amarillo 2007) showed that the pre-contractual negotiations or solicitations occurred in Texas.

6

at 150. The evidence before us fails to show contacts of such ilk between Sreedharan, Anitha and Texas.

Neither live in Texas, maintain a business in Texas, have agents or employees in Texas, or conduct business in Texas. Nor does the record illustrate that they own property in Texas. Furthermore, greater contacts between a defendant and the forum than those here have been held insufficient to establish general jurisdiction. *See e.g., Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (concluding that evidence of the defendant conducting business negotiations in Texas, spending millions of dollars to buy helicopters and parts from a Texas business over a seven-year span, and sending individuals to Texas for training and to ferry aircraft back to South America was insufficient to establish the requisite minimum contacts when the cause of action did not arise from the contacts).

In sum, the record contains insufficient evidence establishing either specific or general jurisdiction over Sreedharan or Anitha Pillai. Consequently, the trial court erred in denying their special appearance. We reverse that decision and render judgment dismissing the suit against them due to the want of personal jurisdiction.

Brian Quinn
Chief Justice

7