**AFFIRMED and Opinion Filed September 17, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-01103-CV**

**MBM FAMILY TRUST NO. 1 AND DALIS WAGUESPACK, IN HER CAPACITY AS TRUSTEE OF MBM FAMILY TRUST NO. 1, Appellants**
**V.**
**GE OIL & GAS, LLC, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07164**

## MEMORANDUM OPINION

Before Chief Justice Burns, and Justices Reichek and Carlyle
Opinion by Chief Justice Burns

MBM Family Trust No. 1 and its trustee Dalis Waguespack appeal the denial of their special appearance. In two issues, the Trust and Waguespack argue the trial court erred in exercising personal jurisdiction over them, and the exercise of personal jurisdiction over them violates traditional notions of fair play and substantial justice. Based on ample evidence supporting the trial court's order, including its credibility determination, we affirm.

In June 2018, GE Oil & Gas, LLC filed its original petition in Dallas County district court. The petition alleged that, in August 2016, GE obtained a

$39,846,575.34 judgment in New York against Michel B. Moreno, a Texas resident, and other business entities GE characterized as the "Moreno Entities." GE domesticated the judgment in Texas in February 2017. GE's petition alleged the Moreno Entities were alter egos of Moreno, and he used the Moreno Entities to shield assets and evade creditors, including GE.

In November 2019, GE filed its third amended petition adding the Trust and Waguespack as defendants. The petition alleged, among other things, Moreno used the Trust to evade GE's collection efforts while directing transfers of money for his personal benefit. The petition alleged jurisdiction and venue were proper in Dallas County, Texas, because the Trust and Waguespack "conduct business there, own property there, and/or negotiated transactions there." Attached to the petition, among other things, was a copy of a March 2018 document establishing a $6.24 million home equity line of credit secured by Moreno's residence in Dallas and listing Moreno as borrower and Waguespack as lender. The line of credit established the place of payment as an address in Dallas and provided that the "indebtedness evidenced hereby shall be construed and enforced in accordance with and governed by the laws of the State of Texas." The line of credit stated it was secured by a deed of trust from Moreno to "Dalis M. Waguespack, trustee."

In May 2020, the Trust and Waguespack filed a special appearance asserting the trial court had no general or specific jurisdiction over "the Trust Defendants." The special appearance alleged the Trust was created under Louisiana law, and

–2–

Waguespack is a Louisiana resident. The special appearance further asserted that the Trust "does not conduct business anywhere, including in Texas"; the Trust does not own property, maintain offices or facilities, or employ employees in Texas; and the Trust Defendants did not participate in "any of the transactions at issue."

At a hearing on the special appearance in November 2020, counsel for the Trust and Waguespack first noted that he would continue to refer to the Trust and Waguespack as "the Trust Defendants," but technically the pleadings were styled as being filed against Waguespack in her capacity as trustee. Counsel argued that Waguespack is a Louisiana resident, and the Trust is a Louisiana trust. Counsel argued the Trust has "engaged in very limited transactions" but, "despite that fact, GE says that the Trust is subject to general jurisdiction, specific jurisdiction, and alter ego jurisdiction in this case." Counsel cited Waguespack's statement that the trust does not maintain an office or employees in Louisiana or conduct any day-to-day business and criticized GE's attempt to rely on Waguespack's statement as evidence the Trust was "at home in Texas because that's where MOR KM's located and its manager Mr. Moreno."

Counsel for GE argued the Trust acquired a fifty percent interest in MOR KM, a Texas holding company managed by Moreno, a Texas resident. Thus, the trust acquired its interest in MOR KM from Moreno, which GE argued amounted to "doing business in Texas." Counsel for GE argued two distributions that MOR KM made to the Trust did not appear on the bank statements the Trust produced or the

Trust's general ledger. One of the distributions was allegedly to repay a loan that the Trust owed to Moreno, but GE's counsel pointed out that the Trust had produced no promissory note related to the loan. As soon as the Trust received the distributions, counsel argued, it sent the money to Moreno or entities under Moreno's control. Counsel for GE argued that one of the distributions the Trust made to Moreno was a $2.3 million loan with no repayment date. GE's counsel further argued that the $2.3 million loan was not reflected on the Trust's balance sheet, which listed "no accounts receivable whatsoever" in 2016.

GE's counsel recounted Moreno's testimony in a prior hearing that he went to the Trust as a "lender of last resort" when he could not get a loan elsewhere, and the Trust opened a $6 million home equity line of credit secured by Moreno's homestead in Dallas. GE's counsel argued that the home equity loan of credit was formed under the Texas Home Equity Line of Credit regulations, subject to Texas law, enforceable in Texas, and secured by a deed of trust in Texas. GE's counsel also cited Waguespack's testimony in her deposition that Moreno called her about being the lender on the home equity line of credit, and "she knew then that she would never loan a dollar to Mr. Moreno and she would only be the nominal lender on that loan." GE's counsel argued Waguespack therefore had knowledge that the home equity line of credit would just use her name nominally to skirt the home equity line of credit regulations.

GE's counsel cited Moreno's testimony at a prior hearing that the "family trust" was Moreno's "lender of last resort." Moreno had testified that he could not get a certified lender and therefore needed a blood relative to act as the lender for the home equity line of credit. In response to questioning by his own counsel, Moreno had testified it was "correct" that Waguespack, Moreno's sister, "stepped in" to act as the lender. Moreno had testified he and his sister "took the transaction seriously and wanted to make sure that the Trust was protected for its investment and its risk, and took out a deed of trust securing his home equity – his home."

In response to questioning by the trial judge, Waguespack's counsel stated the $2.3 million loan was "reflected in the general ledger for MOR KM" that showed the assets being distributed from MOR KM to the Trust, but the Trust "does not have its own general ledger." The trial court asked what records were available, and Waguespack's counsel answered that "it's an undocumented loan." The trial judge stated that he "question[ed] the credibility of both the trustee and Mr. Moreno in this." On November 30, 2020, the trial court signed an order denying the Trust and Waguespack's special appearance. This appeal followed.

In their first issue, the Trust and Waguespack argue the trial court erred in exercising jurisdiction over them because Waguespack is a Louisiana citizen, the Trust was created in Louisiana, and Waguespack had no purposeful contacts with Texas that underlie any of GE's claims against the Trust. In their second issue, the Trust and Waguespack argue the exercise of jurisdiction over them violates

–5–

traditional notions of fair play and substantial justice. Because of the interrelated nature of these issues, we address them together.

As a question of law, we review a trial court's personal jurisdiction determination de novo. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). The trial court, however, is the sole arbiter of the witnesses' credibility and the weight afforded their testimony, *Pritchett v. Gold's Gym Franchising, LLC*, No. 05-13-00464-CV, 2014 WL 465450, at *2 (Tex. App.—Dallas Feb. 4, 2014, pet. denied), and we "will not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.); *Shannon v. Memorial Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 620 (Tex. 2015) (If evidence raises a fact issue as to jurisdiction, appellate court must affirm denial of plea because only fact finder should decide factual issues). When no findings of fact and conclusions of law are issued following denial of a special appearance, all facts supported by the record are implied in support of the order. *BMC Software Belg., N.V. v. Marchland*, 83 S.W.3d 789, 795 (Tex. 2002).

For all intents and purposes, general jurisdiction exists only over individuals who reside in the forum or corporations that maintain their principal place of business in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the

corporation is fairly regarded as at home.") (internal quotation omitted); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565(Tex. 2018) ("Even when a defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant "essentially at home in the forum State.").

On the other hand, the exercise of specific personal jurisdiction over a nonresident defendant comports with due process if a nonresident defendant has "minimum contacts" with Texas and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *M & F Worldwide*, 512 S.W.3d at 885. A defendant's minimum contacts with a forum, i.e., Texas, are established when the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* Three principles govern this analysis:

> (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction such that it impliedly consents to suit there.

*Id.* (quotations omitted).

A nonresident defendant's minimum contacts will give rise to specific personal jurisdiction if the plaintiff's cause of action arises from or relates to those contacts. *Id.* at 886. For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, "there must be a substantial connection between

those contacts and the operative facts of the litigation." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 (Tex. 2013) (quotation omitted). A nonresident's "directing a tort at Texas from afar is insufficient to confer specific jurisdiction." *Id.* at 157. The proper focus is on the extent of the defendant's activities in the forum, not the residence of the plaintiff. *Id.*

However, the absence of physical contacts with Texas does not defeat personal jurisdiction so long as the defendant's efforts are purposefully directed towards residents of Texas. *See Retamco Operating, Inc. v. Rep. Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). A defendant who reaches out beyond one state and creates continuing relationships and obligations with a citizen of another state is subject to the jurisdiction of the latter state in suits based on those activities. *Id.*

The exercise of personal jurisdiction must also comply with traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 154. If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction not comport with traditional notions of fair play and substantial justice. *Id.* at 154–55. We consider the following factors if appropriate: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies;

and (5) the shared interest of the several states in furthering fundamental social policies. *Retamco*, 278 S.W.3d at 341.

A trust has no legal existence; thus, claims intended to recover trust assets can only be asserted against the trust's legal representative—its trustee. *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006). The Trust and Waguespack argue that Waguespack has not taken any action in her capacity as trustee purposefully directed towards Texas. They argue GE "anchor[s] its personal-jurisdiction allegations to third parties' contacts with Texas and then attributes those contacts to the Trust Defendants." The Trust and Waguespack concede that the Trust owns fifty percent of MOR KM, which is managed by Moreno. However, they assert that minimum contacts and purposeful availment cannot be established by "the mere fact that the targeted foreign defendant owns or has indirectly invested in entities that have assets in or contacts with Texas."

In arguing that the Trust and Waguespack have not had minimum contacts with Texas that would support specific personal jurisdiction, they argue that Waguespack participated in the home equity line of credit transaction only in her individual capacity as Moreno's sister and did not participate in the transaction in her capacity as trustee. Thus, they argue, the Trust holds no interest in the home equity line of credit.

In making this argument, the Trust and Waguespack cite no evidence to support their assertion that Waguespack, solely in her individual capacity, had the

–9–

wherewithal to extend a home equity line of credit to Moreno in excess of six million dollars. Further, this argument ignores the fact that the trial court had before it evidence that the "family trust" was Moreno's "lender of last resort"; Waguespack "stepped in" to act as the lender in the home equity line of credit transaction; Waguespack knew that "she would never loan a dollar to Mr. Moreno and she would only be the nominal lender"; the home equity line of credit documents provided the line of credit was secured by a deed of trust from Moreno to Waguespack, "trustee"; and, separate from the home equity line of credit transaction, the Trust made a $2.3 million "undocumented loan" to Moreno. Moreover, the trial judge expressly stated that he "[q]uestioned the credibility of both the trustee and Mr. Moreno." We conclude that the evidence before the trial court, at the very least, raised a fact issue as to specific jurisdiction; accordingly, we must affirm the trial court's denial of the plea to the jurisdiction in this case. *See Shannon*, 476 S.W.3d at 620; *M & F Worldwide*, 512 S.W.3d at 885.

In light of this conclusion, we reject the Trust and Waguespack's argument that the exercise of jurisdiction over them violates traditional notions of fair play and substantial justice. The record supports a determination that the Trust does not maintain an office or employees in Louisiana or conduct any day-to-day business; instead, the record indicates the Trust and Waguespack are involved in providing funds to Moreno, a Texas resident, in Texas. The burden on the Trust and Waguespack in adjudicating the underlying dispute in Texas is therefore minimal.

–10–

Further, it appears that Texas has a considerable interest in adjudicating the underlying dispute in its entirety, and such an adjudication will aid GE in obtaining convenient and effective relief in Texas and result in an efficient resolution of the claims between the parties. *See Retamco*, 278 S.W.3d at 341. We overrule the Trust and Waguespack's first and second issues.

We affirm the trial court's order denying the Trust and Waguespack's special appearance.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

201103F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MBM FAMILY TRUST NO. 1 AND
DALIS WAGUESPACK, IN HER
CAPACITY AS TRUSTEE OF
MBM FAMILY TRUST NO. 1,
Appellants

No. 05-20-01103-CV      V.

GE OIL & GAS, LLC, Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-07164.
Opinion delivered by Chief Justice
Burns. Justices Reichek and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee GE OIL & GAS, LLC recover its costs of this appeal from appellants MBM FAMILY TRUST NO. 1 AND DALIS WAGUESPACK, IN HER CAPACITY AS TRUSTEE OF MBM FAMILY TRUST NO. 1.

Judgment entered September 17, 2021.