**CONCUR and DISSENT; Opinion Filed November 8, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01551-CV**

**WARREN CHEN AND DYNACOLOR, INC., Appellants**
**V.**
**RAZBERI TECHNOLOGIES, INC., THOMAS J. GALVIN, LIVEOAK
VENTURE PARTNERS I, L.P., LIVEOAK VENTURES PARTNERS 1A,
L.P., KENNETH L. AND VIRGINIA T. BOYDA, AS TRUSTEES OF THE
BOYDA FAMILY REVOCABLE TRUST DATED 10/12/1990, AND JIRI
AND ROSEMARY MODRY, AS TRUSTEES OF THE JRAM TRUST UDT,
Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16568**

## CONCURRING AND DISSENTING OPINION ON REMAND

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Schenck

I concur with the majority's decision to affirm the trial court's order denying appellants' special appearances as to Count VII with respect to appellant Warren Chen and reverse and render an order granting appellants' special appearances as to Count II. I dissent from the remainder of the judgment. I also write to provide guidance to the trial court on remand and to explain why, in my view, remanding the

case to the trial court to conform the judgment according to and consistent with the opinion cannot be understood to reinstate the trial court's final judgment.

## BACKGROUND

I have no complaint with the background set forth in the majority opinion, but I will set out the facts and procedural history necessary to explain where I disagree with the majority.

The underlying lawsuit involved, among other things, claims for fraud and breach of fiduciary duty regarding the purchase of certain stock. Appellants filed a special appearance.

The petition contained the following jurisdictional allegations.

Appellees Razberi Technologies, Inc., Thomas J. Galvin, LiveOak Venture Partners I, L.P., LiveOak Ventures Partners 1A, L.P., Kenneth L. and Virginia T. Boyda, as Trustees of the Boyda Family Revocable Trust Dated 10/12/1990, and Jiri and Rosemary Modry, as Trustees of the JRAM Trust UDT 8/21/1996, brought suit against appellants Chen and DynaColor alleging fraud, fraudulent inducement, and breach of fiduciary duty in relation to a stock purchase agreement between Razberi, of which Galvin was president, and the remaining appellees.[1] Appellees further alleged that DynaColor was a non-resident corporation that had conducted business in Texas, Chen was a Taiwanese national who resided in Taiwan and had conducted

---

[1] Appellees also brought suit against Avigilon Corporation and Avigilon USA Corporation, which are not parties to this appeal.

business in Texas, and this lawsuit arose out of, and is related to, DynaColor and Chen's activities in Texas.

The appellees also alleged that Razberi's principal place of business was in Dallas County; Razberi was "formed as the joint-venture vehicle between Galvin and DynaColor"; DynaColor was its majority shareholder; Chen was the CEO of DynaColor and one of two of Razberi's directors; DynaColor sold components of network video recorder (NVR) systems to Razberi to use in manufacturing and selling the Razberi systems; Razberi sold systems to Avigilon; and DynaColor guaranteed certain aspects of Razberi's contract with Avigilon. When Chen informed Galvin that DynaColor would no longer be investing in Razberi, Razberi sought investors elsewhere. The business relationship between Razberi and Avigilon was critical to the investors' decision to invest in Razberi through a Stock Purchase Agreement. Ultimately, the investors (the LiveOak entities, the Boydas, and the Modrys) contributed approximately $3,500,000 to Razberi.

DynaColor and Chen were not parties to the Stock Purchase Agreement. However, in connection with the Stock Purchase Agreement, Razberi and DynaColor entered into a Purchase Agreement under which Razberi would continue to order parts from DynaColor and DynaColor would provide product repair services to Razberi. Razberi also agreed to immediately pay certain amounts due to DynaColor from the invested funds.

Avigilon subsequently reduced its order forecast and then completely stopped ordering from Razberi and instead began ordering from DynaColor directly. Generally, appellees allege that appellants secretly decided to cut Razberi out by moving forward with a plan for DynaColor to usurp Razberi's corporate opportunities to wrongfully compete against Razberi despite Chen's fiduciary duties to Razberi and its shareholders and that appellants failed to disclose such information during the stock purchase negotiations.

The trial court denied appellants' special appearances, and on December 10, 2019, appellants filed an accelerated notice of appeal challenging the trial court's denial of the special appearances. Two weeks later, appellants filed a motion to stay the trial court's proceedings. On January 14, 2020, appellants filed their opening brief in their interlocutory appeal.

While appellants' motion to stay remained pending before this Court, appellees subsequently filed motions for summary judgment, which the trial court granted on February 19, 2020. On March 12, 2020, a motions panel of this Court denied appellants' motion to stay. On June 30, 2020, the trial court signed a final judgment in appellees' favor. The final judgment stated, "The Court previously disposed of certain issues and claims in the above-referenced February 19, 2020 Order, the June 18, 2020 Order, and two nonsuit orders signed on April 23, 2020. These orders and all other orders of the Court in this case are incorporated herein."

Appellants did not file a second notice of appeal following that judgment to reassert its claim that the trial court lacked jurisdiction, and appellees moved to dismiss this appeal as moot. The merits panel assigned to hear the appeal initially granted that motion. After consideration of appellants' motion for rehearing, we granted rehearing and withdrew our earlier opinion dismissing appellants' interlocutory appeal. Appellees then sought further rehearing to reinstate dismissal of the appeal. The Court, with a dissent, granted the appellees' motion for rehearing, withdrew the order granting appellants' motion for rehearing, and reinstated the Court's earlier opinion dismissing appellants' appeal as moot because they failed to file a separate notice of appeal from the final judgment.

Appellants filed a petition for review with the Texas Supreme Court. The Texas Supreme Court held we were obligated to treat the previously perfected appeal as an appeal from the final judgment, but only as to the issues raised in the existing appeal. *See Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 775 (Tex. 2022). The court then reversed and remanded the case to our Court "for disposition of the special appearance on the merits."

DISCUSSION

I. **The Trial Court Lacked Personal Jurisdiction over Defendants Where the Alleged Forum Contacts Pertain to Inaction and Where the Actor Had No Duty to Act**

A. *Personal Jurisdiction*

Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute permits the exercise of jurisdiction and (2) the assertion of jurisdiction satisfies constitutional due-process guarantees. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The long-arm statute provides, in relevant part, that in addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident commits a tort, in whole or in part, in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Personal jurisdiction over a nonresident defendant satisfies constitutional due-process guarantees when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly*, 301 S.W.3d at 658.

Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* at 657–58. In determining purposeful availment, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than random, isolated, or fortuitous, and (3) whether the defendant

sought some benefit, advantage, or profit by availing itself of the privilege of doing business in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). The focus is the relationship among the defendant, the forum, and the litigation. *Id*. at 790 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In this analysis, we do not assess the quantity of the contacts, but rather their nature and quality. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). A court has general jurisdiction over a nonresident defendant whose affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (citing *Daimler v. Bauman*, 571 U.S. 117, 127 (2014)). By contrast, courts may exercise specific jurisdiction when the defendant's alleged liability arises from or is related to its activities conducted within the forum. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007); *accord Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *Moki Mac*, 221 S.W.3d at 579. In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a

substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585; *accord Walden v. Fiore*, 571 U.S. 277, 284 (2014). The operative facts of the litigation are those facts the trial court will focus on to prove the nonresident defendant's liability. *See Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *5 (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.), *overruled on other grounds by Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.); *see also Saidara*, 633 S.W.3d at 126.

For specific jurisdiction, we analyze the defendant's contacts on a claim-by-claim basis to determine whether each claim arises out of or is related to the defendant's forum contacts. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). But, when all the claims arise from the same forum contacts, a claim-by-claim analysis is not required. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 18 (Tex. 2021).

Because the minimum-contacts test is intended to ensure that the defendant could reasonably anticipate being sued in the forum's courts, foreseeability is an important consideration in the analysis. *TV Azteca*, 490 S.W.3d at 46 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). But foreseeability alone will not support personal jurisdiction. *Id.* Instead, the defendant must reasonably anticipate being sued in the forum *because of* actions the defendant

"purposefully directed toward the forum state." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion)). The simple knowledge that the defendant is dealing with a person in Texas or that his alleged misconduct or inaction elsewhere might have an effect here will not establish the requisite minimum contacts. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018). Rather, the defendant must seek some benefit, advantage, or profit by itself of the jurisdiction. *See id.* at 559 (citing *Moncrief Oil*, 414 S.W.3d at 151).

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 154. We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Id.* at 155 (citing *Asahi*, 480 U.S. at 113; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010).

B. *Causes of Action*

(1) Count I (Fraud and Fraudulent Inducement): the investors alleged that appellants committed fraud by making material misrepresentations and omissions that they knew were false, or that they recklessly made as positive assertions without any knowledge of their truth, and fraudulently

induced the investors to enter into the Stock Purchase Agreement and related agreements by making such misrepresentations and omissions.

(2) Count II (Fraud by Nondisclosure): the investors alleged that appellants concealed from, or failed to disclose to, the investors that DynaColor planned to, and did, usurp the opportunity to sell the NVR systems to Avigilon in competition with Razberi.

(3) Count III (Statutory Fraud under TEX. BUS. & COM. CODE ANN. § 27.01): the investors alleged that appellants made a false representation to them for the purpose of inducing them to enter into the Stock Purchase Agreement and that they relied upon the false representation in entering into the agreement.

(4) Count IV (Violation of Texas Securities Act): the investors alleged that Razberi offered or sold securities to the investors by means of an untrue statement of a material fact or omission; that Chen, as Razberi's director, knew the untruth or omission; that his knowledge may be imputed to Razberi; that appellants directly or indirectly controlled Razberi and knew of the untruth or omission; and that appellants, with intent to deceive the investors, materially aided Razberi in its actions.

(5) Count V (Negligent Misrepresentation): in the alternative, the investors and Galvin alleged that appellants negligently made material misrepresentations and omissions and intended for the investors and Galvin to rely upon their misrepresentations and omissions by investing in Razberi.

(6) Count VI (Breach of Fiduciary Duty): Galvin alleged that Chen owed him a fiduciary duty as a shareholder of Razberi because Chen was a director of Razberi and that Chen breached his fiduciary duties of candor, loyalty, and honesty. Galvin also alleged that DynaColor owed him a fiduciary duty because it was the majority shareholder of Razberi and DynaColor also breached its fiduciary duties of candor, loyalty, and honesty to Galvin. Razberi alleged that, as director, Chen breached his fiduciary duties of candor, loyalty, and honesty to Razberi.

(7) Count VII (Breach of Fiduciary Duty): the investors alleged that Chen owed a fiduciary duty to them because he was a director and they were shareholders of Razberi and that he breached his fiduciary duties of candor, loyalty, and care by usurping and diverting to DynaColor corporate opportunities that belonged to Razberi. Chen further breached

his duties through dishonesty and deception regarding his and DynaColor's acts and plans with respect to Avigilon.

C. *Application of Law to Facts*

With respect to Count VII, I concur with the majority that exercise of personal jurisdiction comports with traditional notions of substantial justice and fair play where Chen, as a director, owed a fiduciary duty to the corporation in his directorial actions, and this duty "includes the dedication of [his] uncorrupted business judgment for the sole benefit of the corporation." *See Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014). Similarly, Chen would owe that duty to the investors.[2]

I will concede that even this is a close and difficult question given that the only connection Chen appears to have with this forum State is through an agent. But given Chen's status as a foreign national serving as an officer of a business selling products to other businesses in this country, I believe that he should have anticipated the prospect of being haled into a state within the United States if we credit the plaintiffs' theories as we should.[3] As the company he served as a director had its principal place of business in Texas, I believe he should have anticipated any claim

---

[2] Of course, not all of the investors are Texas residents, so it would seem to be a close question as to specific jurisdiction with regards to the claims of the non-Texas resident investors. Additionally, there may be capacity questions, *i.e.*, are the investors proceeding as individuals or bringing a derivative claim.

[3] As the supreme court has repeatedly held, the "effects test" is not an alternative to the traditional "minimum contacts" analysis, and it does not displace the factors reviewing courts look to in determining whether a defendant purposefully availed itself of the state. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018) (citing *Moncrief Oil*, 414 S.W.3d at 151).

of breach of fiduciary duty to be filed here, even if his own physical contacts with the State were very limited.

Additionally, I concur with the majority with regards to Count II, that the trial court could not have jurisdiction over appellants for the allegation they sat mute in Taiwan.

However, as for any alleged breach of fiduciary duty against *DynaColor*, the supreme court specifically declined to recognize a common-law cause of action for "shareholder oppression," so no similar specific jurisdiction as to Razberi's claim for breach of fiduciary duty against DynaColor. *See Ritchie*, 443 S.W.3d at 891. To the extent the majority concludes that whether DynaColor owes such a duty is soley a question of merits, not jurisdiction, I disagree. We must evaluate jurisdiction claim-by-claim addressing the relationship between the claim, the forum, and the defendant as we go. *See TV Azteca*, 490 S.W.3d at 37, 41 (citing *Calder v. Jones*, 465 U.S. 783, 780 (1984)). Moreover, because the minimum-contacts test is intended to ensure that the defendant could reasonably anticipate being sued in the forum's courts, foreseeability of a potential claim is an important—indeed, controlling—consideration in the analysis. *See id.* at 46 (citing *World–Wide Volkswagen*, 444 U.S. at 297; *BMC Software*, 83 S.W.3d at 795). I question how any foreign national could foresee a suit for breach of fiduciary duty to a fellow shareholder where no such relationship exists and the presence of the shareholder in that state is the alleged basis for exercise of jurisdiction. *See id.* Thus, I dissent from

the majority's affirming of the denial of DynaColor's special appearance as to Count VI.

The majority also affirms the trial court's order as to the remaining Counts I, III, IV, and V after concluding appellants committed fraud and otherwise deceived investors through the actions or statements of their agent, James Chan, as he represented appellants during the negotiations of a term sheet prior to the signing of the Stock Purchase Agreement. The term sheet contained a statement that: "The business, assets, financial condition, operations, results of operations and prospects of the Company are substantially as have been represented to LiveOak and no change will have occurred which, in LiveOak's sole judgment, is or may be materially adverse to the Company." The majority goes a step further to conclude that Chen and DynaColor purposefully availed themselves of the benefits of conducting business in this State because there was evidence that Chen, as a director of Razberi,[4] approved the Stock Purchase Agreement, Chen and DynaColor knew the Stock Purchase Agreement was being negotiated and signed in Texas, and that alleged misrepresentations in the approved agreement are the same ones negotiated in the term sheet.

But in order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be at least some—indeed a

---

[4] I question, too, whether Chen's approval of a statement in his capacity as director of Razberi would permit attributing any misrepresentations in said statement to Chen.

–13–

"substantial"—connection between those contacts and the facts the trial court will focus on to prove the nonresident defendant's liability. *See Moki Mac*, 221 S.W.3d at 585; *accord Walden*, 571 U.S. at 284; *Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *5 (Tex. App.— Dallas May 5, 2016, no pet.) (mem. op.), *overruled on other grounds by Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.); *see also Saidara*, 633 S.W.3d at 126. The facts necessary to prove appellants' liability here appear to be whether Chen or DynaColor disclosed any changes or conditions they knew of that would affect the investors' or Galvin's decisions. Thus, the complained of conduct is, as in Count II, failure to disclose, which is a non-action and not "the defendant's conduct that must form the necessary connection with the forum State." *See Walden*, 571 U.S. at 285. By this theory, a defendant could be haled into any state or country where they were continuously engaged in not acting—a concept antithetical to the notion of purposeful availment.

## II. Having Affirmed in Part the Trial Court's Order, the Majority Cannot Be Understood to Reinstate the Trial Court's Final Judgment

The majority opinion disposes of the special appearance on the merits, but the opinion does not address what effect, if any, the trial court's judgment entered while the appeal of the special appearance remained pending. Instead, the majority opinion remands the case to the trial court to conform the judgment according to and consistent with the opinion. I believe further direction would be helpful here in view of this case's tortured history through our Court.

By affirming in part the trial court's order, I do not believe that we can be taken as leaving the partial or final judgments in place, nor could I understand the majority's opinion to reinstate the trial court's judgment. To reach that decision, the Court would have to conclude the right to review of the summary judgment was lost either by briefing waiver or waiver by failing to file a second notice of appeal. In other words, either the judgment should be reinstated because the parties failed to challenge that judgment in their initial briefs filed in January 2020 a month *before the judgment* was even entered, or the judgment should be reinstated because the parties failed to file a separate notice of appeal after the judgment was entered, which the Texas Supreme Court has already held to be error. *See Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 782 (Tex. 2022).

This Court did not invite the parties to file supplemental briefing after the supreme court's decision and remand to this Court. However, the parties did file supplemental briefs in response to our order inviting them to do so in our order issued after this Court withdrew the first opinion dismissing the case as moot and before the second opinion reinstating the earlier opinion. In those supplemental briefs, they clearly argued not only the merits of the special appearances but also whether the trial court had jurisdiction to render final judgment while the interlocutory appeal was pending in this Court. Accordingly, it cannot be that this Court's judgment reinstates the trial court's final judgment because of any briefing waiver by appellants.

For these reasons, I would provide more complete guidance to the trial court on remand in order to make clear that its summary judgment order must be vacated.[5]

## CONCLUSION

Thus, I concur in part with and dissent in part from the majority's judgment and write separately to express my understanding that this Court's judgment cannot possibly be understood to reinstate the trial court's summary judgment or final judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

191551DF.P05

---

[5] Separate and apart from the effect of the supreme court's mandate and the impossibility of finding the merits of the summary judgment to have been waived, I would also reiterate my view that the trial court lacked subject matter jurisdiction to render a judgment while this Court was vested with jurisdiction over that question. *See Chen v. Razberi Techs., Inc.*, 649 S.W.3d 232, 237 (Tex. App.—Dallas 2021, no pet.) (Schenck, J., dissenting), *reversed by* 645 S.W.3d 773 (Tex. 2022). Having already reversed our judgment finding the merits appeal to be lost to mootness, the supreme court was not obliged to, and did not, reach the question of what should be done with the merits judgment. Of course, had the issue already been waived, this remand to us would be pointless.