**AFFIRM; and Opinion Filed December 27, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00434-CV**

**CRAIG SCHUBINER, Appellant**
**V.**
**MITCHELL R. JULIS AND JOSHUA S. FRIEDMAN, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-17649**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Kennedy
Opinion by Justice Smith

Appellant Craig Schubiner appeals the trial court's denial of his special appearance in this case, which appellees Mitchell R. Julis and Joshua S. Friedman initiated to obtain a protective order against Schubiner. In a single issue, Schubiner contends the trial court erred in concluding that it had personal jurisdiction over him. We affirm the trial court's order.

### Background

Appellees are Dallas residents and co-CEOs of Canyon Partners, LLC, a lending and investment management company headquartered in Dallas. Schubiner,

a New York resident, and Canyon Partners were involved in years of multi-jurisdictional litigation. In this case, appellees claim that Schubiner has engaged in a "harassment campaign" against them and seek a protective order on behalf of themselves and their immediate family members pursuant to Chapter 7B of the Texas Code of Criminal Procedure.

According to appellees, the harassment began in July 2021 when Schubiner, with an "aggressive demeanor," approached Julis and Julis's son on a street in Colorado and, the next day, attempted to gain an in-person meeting with Julis under false pretenses. In April 2022, Schubiner incorporated Canyon Partners News, Inc. (CPN), a California entity. Appellees alleged that Schubiner has used the CPN website, CanyonPartnerNews.com, and an email, texting, and social media campaign to harm them, their wives and other family members, multiple Canyon Partners executives, and Canyon Partners' outside counsel. In November 2022, Schubiner hired individuals to disrupt a private professional event in Dallas at which Friedman was speaking. Appellees alleged that Schubiner's actions constituted the offenses of stalking and harassment and have caused them and their family members to fear for their personal safety.

Schubiner responded to appellees' application for protective order, in part, by filing a special appearance to challenge the trial court's exercise of personal jurisdiction over him. Following a hearing, the trial court denied the special appearance. This interlocutory appeal followed.

**Personal Jurisdiction**

Texas courts may exercise personal jurisdiction over a nonresident defendant if jurisdiction is (1) authorized by the Texas long-arm statute and (2) consistent with federal and state constitutional due process guarantees. TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute is satisfied when a nonresident defendant "does business in this State," which includes, among other things, "commit[ing] a tort in whole or in part" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2); *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). The statute's broad language allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Federal due process limits a trial court's jurisdiction over a nonresident defendant unless the defendant has "sufficient minimum contacts with the forum state such that the maintenance of the suit is reasonable and does not offend traditional notions of fair play and substantial justice." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (internal quotation marks and citation omitted). "A defendant establishes minimum contacts with a [forum] state when it 'purposefully avails itself of the privilege of conducting activities within the . . . state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958)).  There are three parts to a purposeful availment inquiry: (1) only the defendant's contacts with the forum state, and not the unilateral activity of another party or third person, are relevant; (2) the contacts must be purposeful instead of merely fortuitous; and (3) the defendant must be seeking some benefit, advantage, or profit through the contacts.  *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).  "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court."  *Am. Type Culture Collections, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

A nonresident defendant's contacts with the forum state can give rise to either general or specific jurisdiction.  *Luciano*, 625 S.W.3d at 8.  General jurisdiction is established when the defendant has continuous and systematic contacts with the forum state, regardless of whether the defendant's alleged liability arises from those contacts.  *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016).  Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to its activity within the forum state.  *Marchand*, 83 S.W.3d at 796.  The defendant's contacts with the forum state may be more sporadic or isolated, *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010), but there must be "a substantial connection between those contacts and the operative facts of the litigation."  *Moki Mac*, 221 S.W.3d at 585.

A nonresident defendant may challenge a trial court's personal jurisdiction over him by filing a special appearance. TEX. R. CIV. P. 120a. The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Morgan*, 670 S.W.3d at 346 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)). If the plaintiff pleads sufficient jurisdictional facts, the defendant bears the burden to negate all alleged bases of personal jurisdiction. *Id.* If the defendant presents evidence contradicting the plaintiff's factual allegations supporting jurisdiction, the plaintiff may respond with its own evidence supporting the allegations. Alternatively, the defendant can prevail by showing that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish personal jurisdiction. *Id.* Only relevant jurisdictional facts, rather than the ultimate merits of the case, should be considered in deciding the issue. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 n.15 (Tex. 2013).

Whether the trial court has personal jurisdiction is a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). A trial court, however, often must resolve questions of fact before deciding the question of jurisdiction. *Marchand*, 83 S.W.3d at 794. When a trial court does not issue findings of fact and conclusions of law in conjunction with its special appearance ruling, as in this case, all facts necessary to support its order that are supported by the evidence are implied. *Id.* at 795. The defendant may challenge

these implied findings for legal and factual sufficiency when the appellate record includes the reporter's and clerk's records. *Id.* If the relevant facts are undisputed, we need not consider any implied findings of fact and consider only the legal question of whether the undisputed facts establish personal jurisdiction. *Old Republic*, 549 S.W.3d at 558.

In his sole issue, Schubiner contends the trial court lacked personal jurisdiction because appellees failed to establish that Schubiner has "certain minimum contacts" with Texas. Specifically, he asserts that his alleged contacts with Texas were "negligible" and insufficient to support personal jurisdiction and were on CPN's behalf.

Appellees brought this case pursuant to Texas Code of Criminal Procedure chapter 7B, which authorizes a trial court to enter orders to protect victims of certain offenses, including stalking. *See* TEX. CODE CRIM. PROC. arts. 7B.001–.03; *Mu v. Tran*, No. 05-21-00288-CV, 2022 WL 1314949, at *1 (Tex. App.—Dallas May 3, 2022, no pet.) (mem. op.). In their amended application, appellees alleged that their request for protection arose out of "Schubiner's actions directly or indirectly aimed at harassing, stalking, embarrassing, tormenting, and/or annoying" appellees and their family members and "[s]everal of such incidents have occurred within Dallas County." We conclude that appellees' allegations that Schubiner committed unlawful acts in Texas satisfied their initial pleading burden of bringing him within the provisions of the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE

–6–

ANN. § 17.042(2). Accordingly, the burden shifted to Schubiner to negate appellees' bases for personal jurisdiction. Appellees do not assert that general jurisdiction applies, so we consider only whether the trial court had specific jurisdiction over Schubiner.

1.    Specific Jurisdiction

To demonstrate specific jurisdiction, appellees relied on affidavits they submitted with their amended application and the affidavit of Allen Azran, Canyon Partners' Senior VP and Director of Security, submitted with appellees' response to Schubiner's special appearance. The affidavits described the conduct by Schubiner that caused appellees to seek a protective order. That conduct includes the following contacts with Texas:

(1)    CanyonPartnersNews.com identified Friedman's Dallas home and urged others who had "lost all of [their] money and property . . . due to Canyon [Partners]" to "stop by and discuss" it with Freidman and his wife;

(2)    appellees received at least six CPN emails, including emails advertising a book, "Hedge Fund Scum: True Stories About Canyon Partners", which contains photos of appellees and their homes, publishes their addresses, and "spreads . . . falsehoods and fabricated conspiracies" about appellees and Canyon Partners;

(3)    CPN sent dozens of messages to email addresses and/or personal phone numbers of appellees' family members, other Canyon employees, and personal and professional contacts, many of which were not generally publicly available; the messages included links to CanyonPartnersNews.com and attacks on appellees' integrity and business practices; and

(4)     Schubiner communicated with and hired Texas residents to distribute copies of "Hedge Fund Scum: True Stories about Canyon Partners" to individuals attending an event in Texas at which Friedman spoke.

Schubiner submitted an affidavit in support of his special appearance.  Among other things, he averred that:

(1)     he had not been in Texas in at least six years;

(2)     CPN was formed to report on the "activities and transgressions" of Canyon Partners and actions of its affiliates, owners and employees;

(3)     many people, independent contractors, and attorneys have been actively involved in CPN's work (i.e., its website, books, marketing emails, social medial, media relations and in-person events);

(4)     CPN maintains a database of over 7,000 email addresses of people who may be "involved with or interested in the actions of Canyon Partners, its owners, and employees" and periodic email news and marketing updates are sent to all of the email addresses;

(5)     Schubiner had not emailed CPN emails news and marketing updates to appellees or their family members in his individual capacity;

(6)     to Schubiner's knowledge, CPN had never sent an email newsletter to appellees or their family members other than as part of its mass email campaign;

(7)     CPN has published two books, "Hedge Fund Scum: True Stories About Canyon Partners" and "Worse than Madoff: True Stories about Joshua Friedman's Canyon Partners"; and

(8)     Schubiner hired three individuals as independent contractors of CPN to distribute copies of "Hedge Fund Scum: True Stories about Canyon Partners" outside a Dallas building in November 2022.

Schubiner asserts that the complained-of conduct was too "attenuated" and "isolated" to establish personal jurisdiction. He contends that "[m]erely maintaining a 'passive website'" and sending an email newsletter to a list of recipients, a small fraction of whom may reside in Texas, is insufficient to establish personal jurisdiction. The only allegation that could "be considered to have been targeted at Texas," according to Schubiner, is his hiring of independent contractors to distribute books in Texas. Schubiner, however, asserts that his actions, which were limited to engaging the independent contractors, also were insufficient to establish personal jurisdiction.

The jurisdictional evidence shows that Schubiner personally arranged for Texas residents to distribute copies of "Hedge Fund Scum: True Stories about Canyon Partners" to attendees as they entered an event in Texas at which Friedman was speaking. Schubiner communicated with the Texas residents by text message to discuss the terms of the job. He directed them to hand a book to each person attending the event and arranged for the books to be delivered to them in Texas via Amazon. He also arranged and paid, via his personal Venmo account, for one of the Texas resident's transportation to the event.

This undisputed evidence, either alone or in combination with the emails disparaging appellees' integrity and business practices sent to Texas residents, including appellees, their family members, their employees, and their employees' family members, supports the trial court's implied conclusion that Schubiner had

direct contacts with Texas that were purposeful—not random, fortuitous or attenuated—and were directed at seeking a benefit by the contacts. *See, e.g.*, *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 328 S.W.3d 545, 554, 557–58 (Tex. App.—San Antonio 2010, pet. denied) (finding purposeful availment when defendant recruited a Texas resident through an intermediary to perform work in Texas and compensated the Texas resident for that work); *Keller v. Keller*, No. 03-21-00309-CV, 2023 WL 2169490, at \*12–13 (Tex. App.—Austin Feb. 23, 2023, no pet.) (mem. op.) (finding non-resident defendant subject to specific jurisdiction when she initiated contact with Texas resident by sending harassing emails and text messages and "sought to benefit *personally* from [the] communications by intentionally causing [the plaintiff] to be fearful or agitated"). Accordingly, under the appropriate three-part analysis, we conclude that the record supports the trial court's conclusion that Schubiner purposefully availed himself of the privilege of conducting business in Texas.

In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there also must be a substantial connection between those contacts and the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 585. Schubiner asserts that none of his alleged actions "can reasonably be construed as a threat of violence" against appellees and, instead of stalking, constitute protected speech. His argument, however, addresses the merits of appellees' application for protective order, which are not a consideration in this

–10–

jurisdictional inquiry. *See Old Republic*, 549 S.W.3d at 563; *e.g.*, *Moncrief Oil*, 414 S.W.3d at 156 n.15 (although nonresident defendants ultimately may prevail on their theory that the information they received from plaintiff did not constitute trade secrets, it was "a merits issue that [was] inappropriate at the jurisdiction stage").

Schubiner's course of conduct, which included arranging for Texas residents to distribute books at Freidman's speaking engagement and, through CPN, sending disparaging electronic communications to people, including Texas residents who may be "involved with or interested in" appellees' and Canyon Partners' actions, is the foundation supporting appellees' request for a protective order. Appellees alleged that Schubiner's stalking campaign seemed intended to harass and torment them, their families, and their employees and it has had that effect. Accordingly, we conclude that the pleadings and evidence also support the trial court's implied conclusion that Schubiner's alleged liability is related to his activity within the forum state. *See, e.g.*, *Keller*, 2023 WL 2169490, at *3 (plaintiff's claim for a protective order arose from or related to non-resident defendant's sending e-mails, texts, phone calls, postcards, and packages to plaintiff in Texas).

Because Schubiner purposefully availed himself of the forum and there is a substantial connection between his contacts with the forum and the operative facts of this litigation, the trial court did not err when it concluded that Schubiner had minimum contacts with Texas sufficient to allow the exercise of specific jurisdiction over him.

2. Fiduciary Shield Doctrine

Schubiner nevertheless asserts that his contacts with Texas cannot be attributed to him for jurisdictional purposes because he performed them in his "role as an officer of [CPN]." The fiduciary shield doctrine protects a nonresident corporate officer or employee from the exercise of personal jurisdiction when all of his contacts with Texas were made on behalf of the corporation. *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.). However, "a corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct directed at the forum state for which he may be held personally liable." *Id.*; *Nusret Dallas LLC v. Regan*, No. 05-21-00739-CV, 2023 WL 4144748, at *8 (Tex. App.—Dallas June 23, 2023, no pet.) (mem. op.) ("fiduciary shield doctrine does not protect a corporate agent who is alleged to have personally committed a tort and at least some of the agent's tortious conduct involved contacts with Texas"). Indeed, the general rule in Texas is that corporate agents are individually liable for tortious acts committed while in the service of the corporation. *Nevada Nat'l Advert., Inc. v. Silverleaf Resorts, Inc.*, No. 05-16-00694-CV, 2017 WL 655949, at *9 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.).

Appellees have alleged that they are entitled to a protective order against Schubiner based on his personal conduct, which constituted violations of the stalking and harassment statutes and at least some of which involved contacts with Texas.

–12–

Because the fiduciary shield doctrine does not protect a nonresident defendant from the exercise of specific jurisdiction if he engaged in tortious conduct directed at Texas, we conclude it does not protect Schubiner in this case. *See Nevada Nat'l Advert.*, 2017 WL 655949, at *9 ("A corporate officer may not escape liability where he had direct, personal participation in the wrongdoing, as to be the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity.") (internal quotation marks and citation omitted).

3.      Fair Play and Substantial Justice

Finally, we must consider whether, for other reasons, exercising jurisdiction over Schubiner runs afoul of "traditional notions of fair play and substantial justice." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 432 (Tex. 2023) (quoting *Luciano*, 625 S.W.3d at 18). The exercise of personal jurisdiction over a nonresident defendant rarely will not comport with due process guarantees when the nonresident defendant has purposefully availed itself of the forum state and established minimum contacts with the forum. *Id.* "To avoid jurisdiction, the defendant would have to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Id.* (internal quotation marks and citations omitted).

To determine whether exercising personal jurisdiction comports with traditional notions of fair play and substantial justice, we consider the following factors, if applicable: (1) the burden on the defendant; (2) the forum state's interests in adjudicating the dispute; (3) the plaintiff's interests in obtaining convenient and

effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). On appeal, Schubiner does not address these factors, but asserts generally that "the relief sought would have global ramifications for his and other non-parties' rights to freely express themselves on matters of public concern."

After considering the relevant factors, we conclude that the exercise of personal jurisdiction over Schubiner is consistent with traditional notions of fair play and substantial justice. Schubiner will be burdened, and may incur greater expense, by defending this suit in Texas because he is not a Texas resident. Texas, however, has a significant interest in adjudicating this dispute in which Texas residents seek to obtain a protective order. And, litigating appellees' application for protective order in the trial court best advances their interests in obtaining convenient and effective relief. Accordingly, we conclude that this is not one of those rare cases in which exercising personal jurisdiction over a nonresident defendant with established minimum contacts with the forum state does not comport with traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 156.

Based on the pleadings, the evidence, and the trial court's implied findings and conclusions, which the record supports, we conclude the trial court did not err in concluding that it could exercise specific jurisdiction over Schubiner and denying his special appearance. We overrule Schubiner's sole issue.

**Conclusion**

We affirm the trial court's order denying Schubiner's special appearance.

<table>
<tr><td></td><td>/Craig Smith/</td></tr>
<tr><td></td><td>CRAIG SMITH</td></tr>
<tr><td>230434F.P05</td><td>JUSTICE</td></tr>
</table>



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | |
|---|---|
| CRAIG SCHUBINER, Appellant | On Appeal from the 44th Judicial District Court, Dallas County, Texas |
| No. 05-23-00434-CV     V. | Trial Court Cause No. DC-22-17649. Opinion delivered by Justice Smith. |
| MITCHELL R. JULIS AND JOSHUA S. FRIEDMAN, Appellees | Justices Carlyle and Kennedy participating. |

In accordance with this Court's opinion of this date, the trial court's order denying appellant CRAIG SCHUBINER's special appearance is **AFFIRMED**.

It is **ORDERED** that appellees MITCHELL R. JULIS AND JOSHUA S. FRIEDMAN recover their costs of this appeal from appellant CRAIG SCHUBINER.

Judgment entered this 27th day of December 2023.